I'd like to reserve five minutes for rebuttal. I briefed three issues on appeal, but today I'd like to focus on entrapment, and specifically the question whether the district court's failure to instruct the jury that the government bore the burden of proving beyond a reasonable doubt that my client, Francisco Rodriguez, was not entrapped requires that a new trial be granted. And I submit to you that the evidence in this case shows that the answer to that question is yes. After watching and hearing 22 days of trial testimony, district judge James Selma concluded that the evidence was sufficient to submit the question of entrapment to the jury. It's undisputed and well established that once a defendant raises sufficient evidence of entrapment, the government bears the burden of proving beyond a reasonable doubt that the defendant was not entrapped. And it's equally clear in this case that the instruction that was given did not place that burden on the government. That should be the end of this. There needs to be a new trial. But the government argues that the evidence wasn't even sufficient to get the question to the jury. I submit to you that given the evidence in this case, the government is wrong. This is an appeal where the evidence really matters. And yet the government's brief either distorts or ignores all the key evidence supporting the entrapment defense. In the early morning hours of July 26, 2003, Francisco Rodriguez's close friend was shot and murdered and died in his arms. The government argues that it was Mr. Sierra's murder that drew Francisco Rodriguez more into gang activity and eventually led him to commit racketeering activity, including conspiracy to murder. But the government's argument ignores the immediate aftermath of that murder. Mr. Rodriguez, a known friend of West Myrtle gang members, including Mr. Sierra, did not, after this murder, get together with West Myrtle gang members and plan a retaliation. It's undisputed that he had access to a gun during that time period. He didn't go get his gun and plan to kill Stanton gang members. Instead, he stayed at the scene of the crime. When police officers arrived and they asked who knew the victim, he said, yes, he's my friend. He answered all their questions. When it was determined that it was not safe for him to be there, he was placed into a patrol car and driven to the Stanton Sheriff's Substation where he answered more questions from homicide detectives. When he eventually left the station, he still didn't go and get together with West Myrtle gang members and plan a retaliation. He went home. He went to his friend Edgar Ponce's house, a non-West Myrtle gang member. They went to the hospital and learned that Ismael Sierra had died. What did Francisco Rodriguez do then? He went to Ismael Sierra's mother's house. She asked him to take her to the scene of the crime and he did. She cried there and then he went home. He did not get together with West Myrtle gang members and plan a retaliation. The next day, the homicide detectives came back. They asked him more questions. He was cooperative again. All this cooperation with the police stopped when he was called by Simon Navarro, a 30-year-old, prison-hardened, muscular, tattooed, purported West Myrtle gang leader, and a spiral of blood. He was a murdering Mexican Mafia associate and a government informant. The informant told him, I got word of the murder and you need to come to my house or you know what's coming to you. So Francisco Rodriguez went. He testified he thought that that meant that he would get hurt if he didn't go. That Mr. Navarro had a reputation on the street. That he in fact witnessed Mr. Navarro beat up a smaller member of the neighborhood. So he went. And what did Mr. Navarro tell Francisco Rodriguez when he got there? That he had gotten word and that SANA wanted to make sure that none of the rules were broken. SANA, the head of the Mexican Mafia, wanted to make sure that none of the rules were broken. And what Simon Navarro had already testified, the number one rule of the streets was, you do not cooperate with the police, you handle retaliation on the street. And he told Mr. Rodriguez, do not cooperate with the police, we are going to handle this on the street. And he ordered Mr. Rodriguez to attend a West Myrtle gang meeting. A mandatory West Myrtle gang meeting. And the evidence is undisputed, this is the first mandatory West Myrtle gang meeting that has ever occurred. And what does mandatory mean? It means if you don't go, you're going to get beat up. And at that meeting, Simon Navarro testified that someone like Francisco Rodriguez would have to go to that meeting or he would get beaten up. Another phone call occurred between that day and the July 29th meeting. And Mr. Rodriguez did go to that meeting. And it was at that meeting that the government alleges, and that Mr. Navarro testified, that the conspiracy to murder Stanton gang members was incepted. Judge Selma, after having seen 22 days of trial, concluded that this was sufficient evidence of entrapment to instruct a jury. Can you shed some light on why a federal judge in a federal trial would have given a state entrapment instruction? Was that discussed at all? In the record? I think it's really unclear. The defendant proposed the Ninth Circuit model jury instruction. The government said no instruction at all is warranted. No one ever really discussed which instruction it ought to be. And then sort of out of the blue, Judge Selma said I think it ought to be the California instruction. Now, I mean, my speculation is that it's not in the excerpts of record, but there are pages and pages of documentation regarding the instructions regarding the self-defense defense to the murder and attempted murder. And Judge Selma might have just got in his mind that, oh, wait, we ought to be applying California law. It's not something that the government proposed. It's obviously not anything that defendants ever proposed. Was it objected to at the time when Judge Selma said this is what he was going to do? Absolutely. The defendant objected a number of times. First, Mr. Wilkie said this is a federal case. This is a federal offense. This is a federal trial. It has to be the federal instruction. And Judge Selma said, well, I disagree. I think because conspiracy to murder is a California crime, it ought to be the California instruction. And then Mr. Wilkie said, I absolutely disagree with that. Conspiracy to murder is an element of a federal offense, so it has to be the federal instruction. And Judge Selma said, well, I haven't decided yet. I think I'm going to, I'm pretty sure I'm going to instruct on entrapment. I just haven't decided. And no one's raised this to me before. And then when the second, the issue came up again when they were discussing the instruction on the Viker. And at that time, the government did say that they agreed with the court that it ought to be the California instruction. But the government had never suggested that. And the government on appeal concedes that it was the wrong instruction. And their only argument is that there wasn't sufficient evidence at all. And basically their argument is that they also have sufficient evidence. The government had sufficient evidence to get the charge to the jury, meaning Mr. Rodriguez can't prove that he was entrapped as a matter of law. But he doesn't need to be able to prove that he was entrapped as a matter of law. He only needs to prove that he was entitled to an instruction. The government's argument amounts to basically we should just ignore the defendant's evidence, which of course we can't do when we're talking about instructional error. And it would be especially inappropriate in a case like this, where what we know is Mr. Rodriguez was acquitted of every count related to murder and attempted murder. And his defense to those counts were that he was acting in perfect self-defense, that he had the actual, if unreasonable, belief that his actions were necessary to prevent the death of his friend. What we know is that the jury believed him because he was the only witness who testified to that. They believed him and they acquitted because the instruction said that the government bore the burden of proving, beyond a reasonable doubt, that Mr. Rodriguez had malice forethought. The jury wasn't instructed that the government bore the burden of proving beyond a reasonable doubt that Mr. Rodriguez was not entrapped. And the jury convicted. You mentioned you wanted to reserve five minutes, and I see that's where we are. Thank you, Your Honor. Thank you, Ms. Chapman. May it please the Court, Nancy Spiegel for the United States. Your Honors, as we said in our briefs, we are conceding that the state court jury instruction was erroneous. However, our position on appeal is that no entrapment instruction was warranted on the state of the evidence. If we don't agree with you on the latter point, if we agree that Judge Selma was half right, that an entrapment instruction should have been given, he just gave the wrong one, then your goose is cooked. Is that fair to say? That is correct. Absolutely correct. Yes. But our position is that the test even being that there's slight evidence needs to be shown, we contend that there was not that slight evidence shown here in this case. You have a defendant whose participation in the conspiracy was voluntary. He was an active and eager participant. He chose to be a gang member. He chose to commit crimes on behalf of his gang. The defendant's contention that Simon Navarro induced all of these criminal acts is just incorrect. Even though Mr. Navarro did, according to the evidence, order the defendant to attend mandatory gang meetings, Navarro never once in the 22 days of testimony was there evidence that he ever encouraged, suggested, or threatened the defendant to actually commit any of the criminal acts that he committed. Why would Judge Selma think that entrapment was at least in play? Well, I can't speak to that. I think... I mean, it didn't just come to him in a dream. I mean, there's evidence that this informant kind of got the ball rolling. Right. But I think perhaps because the trial was so long, maybe it wasn't clear to the court at the time. But here, if you look at the actual evidence, all that Simon Navarro, the government informant, did was order the defendant to attend gang meetings. The defendant's behavior at those gang meetings clearly shows both his predisposition and the lack of any inducement by Navarro to commit crimes. And there's two things especially. One is the drive to the Stanton gang area where the West Myrtle gang was going to retaliate. And that occurred in July of 2004. Simon Navarro had nothing to do with it. He didn't realize that the defendant was going. The defendant was armed. The defendant made comments about wanting to shoot up gang members. This wasn't an induced act. And the other act was the January party where a defendant and other West Myrtle gang members were at a party at a hotel. And they became involved in a gang altercation with a rival gang. And the defendant shot and killed one person and shot and wounded another person. Now, even though the jury acquitted the defendant on the substantive counts, the fact is that Simon Navarro had nothing to do with this party. He wasn't there. He didn't know it occurred. He never told the defendant to go. He never told the defendant to bring weapons. So, in terms of inducement, there just really is... What did Navarro do? What did Navarro do with respect to this defendant? He ordered him to attend a couple of gang meetings. Who put Navarro up to that? That was law enforcement. But, as was undisputed in the evidence at trial, Navarro's role in this was to prevent any further violence. To prevent West Myrtle from retaliating for the murder of Ismael Sierra. And the evidence clearly shows that that's what he did. At Excerpt of Record 418, there's evidence that Navarro said the gang should not retaliate right away. And it goes on like that throughout the course of the evidence. There's not one place where he's saying, hey, Trigger, please bring a gun and please do this and please do that. All he ordered him to do was to attend a gang meeting. And that's not a criminal act. And this court has said in Pullman, and the Supreme Court has said in Jacobson, that there has to be more than that for inducement. There has to be some sort of special inducement or the government has to originate the criminal design for it to rise to the level of inducement. You can't just be providing this opportunity for crime to occur. And that sort of feeds into the predisposition argument, which is, why is this defendant here in the first place? Well, he was predisposed to be committing these crimes. This isn't his first exposure to the West Myrtle gang. Back in 2002, he was actually in custody at Los Pinos for having committed crimes with West Myrtle gang members. You're making a pretty good argument that the entrapment defense would be a loser. But I'm not still clear why at least he doesn't get the instruction and why Judge Selma was wrong in thinking that he at least gets his foot in the door. Because our position is based on the case law and on the facts here that it wasn't sufficient to show even slight evidence that would warrant the instruction. Just because... He just needs what? Some evidence? What's the standard? Slight evidence is the standard, yes. We would rely on this court's decision in Marbella, where this court found that the site is 73F3rd, 1512. This was a fraudulent medical billing scheme where the defendants would bill the insurance companies for many more visits to their clinics than had actually occurred. And this court found that there was no instruction warranted because the government, although the government was involved in confidential informants posed as victims in the scheme, the government did not suggest the actual commission of a criminal act. The government agents did not tell the defendants to actually submit the fraudulent bills to the insurers. This court found it didn't rise to the level of inducement. And as for predisposition, like the case here, there was absolutely no evidence of reluctance to engage in the criminal acts. At these gang meetings, as is apparent on the videotapes, this defendant was engaged, participating, volunteering comments, volunteering his eagerness to participate in the retaliation. Even at one point where the leader of the gang, Tovey, told him he didn't want him to go because law enforcement had known of the defendant's existence, the defendant insisted, I have the weapons, I need to get revenge for the killing of my fellow gang member, and I need to go. Before the meeting, before Mr. Navarro told Mr. Rodriguez that he must attend this meeting, was there any evidence that Mr. Rodriguez had any interest in retaliation? Well, the short answer is no, not on this record. The longer answer, though, is that this first meeting and the contact by Navarro occurred very shortly after the actual murder. So, you know, I don't know what might have happened had Navarro not become involved at law enforcement's request. The fact, though, is that he was associating with West Myrtle gang members. He was committing crimes with them. He admitted during his direct testimony that he was happy to hold weapons for them when they themselves were not allowed to hold weapons. Even at this party, the party where his compatriot was murdered, he testified, well, he said at one of the gang meetings, the first gang meeting, in fact, he told his fellow gang members that when he was hit up and asked where are you from, his answer was West Myrtle, and that was the admission of his involvement in the gang. If this Court has no further questions, the government will submit. Thank you, Ms. Speedle. Thank you, Your Honor. Ms. Chen, you've got some time left on rebuttal. I want to briefly respond to the government's arguments regarding the entrapment and then touch very quickly on three evidentiary issues, because if this Court is going to order a new trial, I don't think that the same evidentiary error should occur at the second trial. Very briefly on the issue of entrapment, the government has gotten up here and argued that attending a gang meeting is not a crime, and yet the only overt acts alleged in the indictment in which my client participated was the attending of gang meetings. This drive to Stanton a year later was not even alleged as an overt act in the indictment. The conspiracy was incepted on July 29, 2003 at a gang meeting which my client was ordered to attend. So I find it somewhat odd that the government argues that attending gang meetings is not a crime when the only thing that is alleged in the indictment that my client did was attend gang meetings where these kinds of discussions occurred. And then in terms of this idea that my client's, you know, what happened on the tapes showed that he was eager and willing to participate, that's a great argument for the jury, but the jury needed to make that determination. The law of the circuit is very clear that willingness is not the test for predisposition. Predisposition is whether you are predisposed to act before the government contacts you, not after the government contacts and induces you. Are you then willing? So again, as Judge Silverman indicated, that's a great argument for the jury, but the fact that we can have this argument means that this question needed to go to the jury. On the three evidentiary issues, I don't know. I really didn't discuss them. I'm uncomfortable bringing up in rebuttal for the first time something that wasn't raised. She can't answer that now. That's fine. I would just ask that the court actually rule on those issues so that the same errors don't occur at the second trial. Are there any further questions? I don't think so. Thank you, Ms. Chancellor Spiegel. Thank you. The case is argued as submitted.
judges: Conlon, Hall, Silverman